Chen requests that the court vacate the BIA's denial of asylum, withholding of removal, and protection of the Convention Against Torture for three independent reasons. First, the agency applied the wrong legal standard in holding that Chen did not establish the changed circumstances exception to the one-year filing deadline for asylum. Second, the agency erred in finding that Chen did not satisfy his burden of proof for withholding of removal or protection under the Convention Against Torture. The agency made erroneous corroboration findings, disregarded evidence relevant to past persecution, future persecution, and future torture, and failed to provide a reasoned explanation for its decision. Third, with regard to protection under the Convention Against Torture, the agency committed legal error by only considering evidence of Chen's treatment in the past without considering evidence relevant to the possibility of future torture, including country conditions. Unless the court prefers otherwise, I will first address the errors regarding the withholding and CAT claims, and then return to the one-year deadline. The agency erred in finding that Chen did not satisfy his burden of proof for withholding of removal or protection under the Convention Against Torture. The agency made erroneous corroboration findings, but even if the corroboration findings were correct, the court should vacate the decisions because the agency disregarded credible, legally significant, unrebutted evidence regarding past persecution, future persecution, and future torture. First, with regard to the corroboration findings regarding Chen's mother's statement, the BIA erred in finding that Chen's mother's statement, quote-unquote, did not corroborate events. Can I ask you a special question about the corroboration aspect of this case that I have really been wrestling with, and I'm hoping you two fine lawyers are going to set me straight on this. So is there a difference? Are there two different kind of sets of opinions here? Is there a difference between an IJ saying, look, I'm crediting your testimony. Your testimony is credible. Nevertheless, I'm requiring certain corroborating evidence. You didn't provide it, and therefore you lose. Is that different from an IJ saying, look, when I look at all of the evidence in this record, I am finding that you haven't met your burden of coming forth with credible, persuasive, and specific testimony, and I am finding that in part because there is certain sort of documentary corroborating evidence that one would expect to find with an account like yours, and I don't see it here. Are those two different things, or is that the same thing? It sounds to me like you're describing two different things, Your Honor. Okay. Well, which one happened here? I think the first scenario where the judge— How do we know that? Because there's no specific finding that, as we said, they're supposed to be in Oyembura, that, yes, this is credible testimony. I am nevertheless seeking the following corroborating evidence. When I read the IJ's decision and when we wrote the opening brief, that was one of our arguments, that there was not a threshold credibility finding. Why don't you think it's the second category, since there was no threshold finding? The government, in its brief, said that— I know. I don't understand that either. —that Mr. Chen credibly testified and that the immigration judge did not have any doubts as to his credibility, plausibility, or veracity. And then we would accept that concession, and if it is true that the IJ found him credible, then the IJ had the obligation to weigh the credible testimony with all of the evidence in the record and had the ability and the discretion to require corroborated evidence for certain claims. However, the government only defends the lack of corroboration of the medical records, which are not in the record, and the government defends the BIA's position that Chen's mother's statement, quote-unquote, did not corroborate events. I think that's an erroneous finding because Chen's mother's statement corroborated many events. But even if the corroboration findings were correct, the immigration judge did not consider unrebutted, legally significant, credible evidence regarding past persecution, future persecution, and future torture. So that's, I think, where the error is. I think we're in your second scenario where the immigration judge did not comply with his duties to consider all evidence. Because we're talking about the burden of proof, and the burden of proof statute that is analyzed in Wambura talks about in determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. With the government's concession that Chen testified credibly, we do not have the immigration judge considering other evidence. For example... But isn't it, counsel, isn't it, in a lot of these cases, we wish we had more fulsome opinions. And maybe this one is another one that we say you just didn't say enough. But isn't it pretty clear reading these opinions that they have the testimony of the petitioner? And he, you know, to satisfy the past and future persecution prongs, he's talked about an event where he was, you know, beaten and jailed and went to the hospital. And both the immigration judge and then the VA say, OK, but you haven't given us the records. And there's records there. There's a question of, OK, I gave them to my attorney. The attorney says you didn't. And those are plainly not the sort of crybrain evidence that is not available. And I think that both places, they say that. It just seems to me that we're picking this apart to suggest that there's not a finding that you have not just given enough evidence of this event to satisfy your burden of proof. Well, there's a two part answer to your question, one about the medical records. I understand your point, Your Honor. I do believe that the IJ did not comply with the corroboration statutes as explained by the board and matter of LAC, because he did not discuss in his decision whether the records were reasonably available to Chen. The testimony is that the records exist, but that doesn't mean that they're reasonably available to him. His testimony was that he believed his mother sent the records to his attorney. His attorney says, I don't have them. The implication is that the records are lost. I do think that the judge needs to address that in his decision. The matter of LAC says that the board, the IJ should clearly state for the record whether the applicant sufficiently explained why he cannot produce the requested evidence. And I think it is important to ask the immigration judges to clearly comply with the statute as explained by matter of LAC. Matter of LAC says that the legislative history of the Real ID Act demonstrates that the corroboration provision was enacted in an effort to bring clarity and consistency to evidentiary determinations. So is it enough if an IJ says you should have produced it, you could have, and you didn't? We would submit that that does not comply with the statute. So if the attorney and or the mother had them, your position I guess is that they got lost, so that explains why he didn't produce them at the hearing? That's the explanation at the hearing, and then the judge's obligation under the statute is to state in his decision whether that explanation is sufficient. But even if the IJ's corroboration findings were correct, the immigration judge only focused on the three-day detention and the beating. Hang on, if we're talking about corroboration, I don't, why are you skipping past? I mean, there's a question about whether the medical records are reasonably available, and at least we know they existed, and there does not seem to be any clear statement on the record that they were unavailable. But the IJ also relied on the absence of corroboration in the form of affidavits from his fellow church members, and there he said several times, well, of course I can't get those because they'll be persecuted too, and that is consistent with the country reports, and the IJ never mentioned that. That's correct, and that's one reason that I think the IJ's corroboration findings are erroneous. He uses the same language with medical records when he's talking about the letter from the pastor. The IJ says, it seems to me you could have gotten a letter from your pastor without addressing any of Chen's testimony or the country conditions evidence that getting the letter from his pastor would have put his pastor in danger. The government does not defend that corroboration finding, which is why I wasn't going to talk about it. I didn't bring it up, but I do think it does show a pattern in the way the IJ looked at the evidence. Does it matter, counsel? I mean, I think that's a fair point. I think it's unclear to me from the IJ opinion the extent to which he did say it seems like the minister could have provided it, and then the following paragraph goes back, and you could argue he's really relying on the medical records. I can't tell for sure, but when we get to the BIA opinion, the focus is almost exclusive. There is one line near the end where he talks about other events in the church, but the strong basis or the basis of this is the medical records. When you look at the BIA opinion, that seems to not really be addressing the other issue very much. I read the BIA opinion as affirming the IJ's holding the lack of the pastor's letter against Mr. Chen, and that was clear error. But the government says that the BIA did not rely on that, so I didn't respond to that in the reply brief. The BIA made a declaratory statement that Chen's mother's statement did not corroborate events, so both the IJ and the BIA overlooked the corroborating information in the mother's statement. The mother's statement corroborated Chen's testimony that the police arrested him in July of 2008 because he participated in a house church. The police detained him for three days, that he was beaten, that he was released after she paid a large fine, and that he had to report to the police each time after he reported he was terrified. And then after he fled to the United States, police often came to her house to look for him and asked her to persuade Chen to come back to turn himself in. Like the IJ and Irita de Ross v. Wilkinson, the IJ and Chen's case failed to thoroughly examine the content of Chen's mother's statement. This was error. And I think the IJ's overlooking the corroborating evidence in the mother's statement carried to the IJ overlooking Chen's credible testimony and other evidence. With regards to the past prosecution, the IJ only focused on the three-day detention and Chen's testimony that he was beaten. And the IJ actually had an erroneous view of the record. He said that Chen was only beaten one time when Chen testified that he had been beaten during his interrogation and at other times. The IJ disregarded Chen's testimony that during interrogation, the police told Chen to plead guilty to participating in a cult and threatened that he would be in more trouble if he did not plead guilty. The IJ disregarded Chen's written statement that the police kicked him, threatened to break his legs, and instigated other prisoners to abuse him. And upon release, the police coerced Chen to sign his name to a confession and promised to never participate in quote-unquote illegal activities again. The government ordered him to report once a week where police officers threatened to imprison him again unless he identified other members of the quote-unquote evil sect in his community. The IJ did not consider that the Chinese government prevented Chen from practicing his religion and did so through coercive means, so the persecution was ongoing. The IJ also did not consider country condition evidence at all in his analysis of past persecution and the likelihood of future persecution. The country condition evidence corroborated his testimony about his past persecution. The State Department reported that the government arrested and detained members of house churches and that arbitrary detention and coerced confessions were some of the most significant human rights violations. And then with regard to future persecution, this court has said that State Department reports are highly probative of a well-founded fear case. And there were two State Department reports in this case, and the IJ didn't discuss any of it. There's no doubt that Chen is a Christian, and the State Department's Religious Freedom Report states the Chinese government tortured, physically abused, arrested, detained, sentenced to prison, or harassed adherents of certain religions for their religious activities, including members of unregistered Christian churches, otherwise known as house churches. So when it comes to the burden of proof, we're not just looking at corroboration, but looking at the credible testimony of the petitioner, all the evidence of record, especially the country conditions evidence, the corroborating information in the mother's statement, and the immigration judge disregarded all of this evidence in coming to his conclusions that Chen did not satisfy his burden of proof. And the BIA affirmed those errors. Regarding the Convention Against Torture, the agency committed legal error by only considering evidence of Chen's treatment in the past without considering any evidence relevant to the possibility of future torture. The agency also committed legal error by failing to address any country conditions evidence at all in his decision. The regulations implementing the Convention Against Torture require that in assessing the burden of proof, all evidence relevant to the possibility of future torture shall be considered. And this includes relevant information regarding conditions in the country of removal. And this court has said in several cases that with regard to Cat, failure to consider country conditions evidence is grounds for reversal. In Quintero v. Garland, this court said country conditions alone can play a decisive role in granting Convention Against Torture relief. And Rodriguez Arias said the wholesale failure to consider petitioner's country conditions evidence constitutes reversible error. In Quintero, this court said even if petitioner has not suffered past torture, that by no means constitutes a sufficient basis for denying his Convention Against Torture claims. The IJ's decision regarding Chen's application for protection under the Convention Against Torture was legally erroneous, and the BIA erred by affirming that decision. Regarding the one-year deadline, courts have jurisdiction to review questions of law under 8 U.S.C. § 1252a-2d. In Chen's case, I am out of time. Thank you. In Chen's case, the BIA applied the wrong legal standard when it failed to consider that new facts that provide additional support for a pre-existing asylum claim can constitute changed circumstances. The board found that the facts that existed in 2014 when Chen filed his asylum application also occurred previously. And for this reason alone, the board came to the legal conclusion that there was no change in circumstances. The board engaged in no analysis of whether the fact that the police were looking for Chen five years after he left China was an intensification of prior threats of persecution, or new instances of persecution of the same kind suffered in the past. For this reason, the board committed legal error, and the court should remand Chen's asylum case to the board for proper analysis. Can I ask you a question about that? What if I think it's actually really hard to tell whether the agency here did exactly what you just said, sort of didn't apply Zambrano and made sort of a legal error, or whether what the agency was doing was applying Zambrano and basically holding that even though new instances of the same kind of conduct can qualify as changed circumstances, these don't? And then that would be a factual finding we can't review. What if I can't tell the difference? I think that... Would I maybe presume the agency did it right? Like, you did decide Zambrano a year before the IJ decision. That's correct. At a minimum, if we can't tell what the BIA was thinking, the agency didn't clearly disclose its reasoning, and the court should remand the case to the agency to provide additional explanation. But the phrase, thus, there are no changed circumstances is a legal conclusion, because the term changed circumstances has a legal definition. I mean, I totally hear what you were saying. I will just say, as someone who writes opinions a lot, with a lot more time than the BIA has, I'm somewhat nervous about having so much turn on the grammar of that sentence. But I do understand that that is the plainest reading of the sentence. I see what you're saying. All right. Thank you. Thank you. Mr. Kinney? Good afternoon. May it please the court, I'm Brett Kinney on behalf of the Attorney General. This court should dismiss the petition for review for lack of jurisdiction as to petitioner's claim for asylum, and it should deny the petition as to the claims for withholding of removal and cap protection. As an initial matter, I think it's important for this court to remember that the Supreme Court has recently emphasized that agency decisions in the immigration context are subject to traditional administrative law principles, and specifically the principle that this court and courts of appeals must uphold a decision of less than ideal clarity if the path of the agency's decision-making is reasonably discernible. And I think that resolves a lot of the questions against the petitioner's arguments. Well, I'm sorry. Is it okay if we start then just where we left off because it will be convenient on this asylum question? I mean, doesn't it, if you really just take the agency at its word, it does certainly look like the BIA is saying, look, the same thing has been happening the whole time, and thus, per se, that can't count as a change in circumstances. And we did hold in Zambrano that, yes, it can. So what do I do with that? Yes, Your Honor, that was this court's holding in Zambrano. But looking at the text of the agency's, the board's decision, notably in the preceding sentences, the board is discussing the specific facts of the petitioner's case. And then it says, thus, there is no change in circumstances, meaning no change here. On these facts, there was no change. The only fact that they say is that he testified that the police had been looking for him since he left and had never stopped. Thus, there is no change in circumstances. And I don't see how that allows for an argument that the fact that they have never stopped is itself the change in circumstances. I thought they would give up. But it turns out all these years later, they're still after me. That's my change circumstance. Correct, Your Honor. And notably, the board cited to the transcript from the petitioner's testimony where that was his claim, indicating that it was looking at his specific facts, the specific reason he claimed that he waited nearly five years. But what I can't tell, I totally agree with you. And what is hanging me up, and I will let this drop in one second, is I can't tell whether they look from this opinion, whether they looked at those facts and concluded that they fall out as a legal matter because there has been no change. This has been more or less static. Or whether what they meant to say but didn't say is sure. Under Zambrano, like the fact that it's been happening the whole time, the fact that it is a repeated instance of the same kind of thing doesn't per se disqualify it. But on these facts, I just don't see any kind of significant increase in the risk here. I mean, you're sort of asking me to assume that that's what they meant. And that, I guess, is where the and that's when they said thus, that's what they meant. Correct, Your Honor. And that's what the Supreme Court has directed the courts to do is to, if they're reading a decision of less than ideal clarity, and if it's capable of being read to support the agency's decision, it must be read in that way. And that's what the Supreme Court said in Garland v. Mendy. And applying that principle here, it's the board didn't say he cannot demonstrate or the definition of changed circumstances doesn't encompass what he said. Which would be an error under Zambrano that the court recognized in Zambrano and then recently in Garcia-Fernandez. This court said that the board had erred as a matter of law in imposing a rule about what the definition of changed circumstances was. That's not what the board did here. They didn't say he cannot demonstrate changed circumstances. They said he did not. And that is a factual question which lies outside of this court's jurisdiction to review. And that's consistent with this court's decision in Gomez v. Holder, which addressed a similar circumstance, where a non-citizen said that they initially didn't apply for asylum because they thought conditions in their country might improve. Only upon another instance of the same type of harm in the petitioner's home country did that petitioner then apply for asylum. And the agency said that's not a change in circumstances. And this court held that it lacked jurisdiction to consider that discretionary determination based on factual circumstances. And that's exactly what the agency did here. Or at least it's reasonably discernible that's what the agency did. And under Garland v. Minkdy, this court should deny the petition for review for lack of jurisdiction. I'm sorry, I think, and I really apologize for eating up so much of your time. Reasonably discernible, I think, means something different. I thought in our reasonably discernible cases we were saying we can tell which the agency meant. I think you're arguing something different. That even if we can't tell, like I just said, could have been either, 50-50. You are saying it's not reasonably discernible, but we still have to pick the reading that would have the agency doing the right thing, the legally appropriate thing. Not necessarily to that extreme, Your Honor. But in Minkdy itself, the Supreme Court faulted the court of appeals for failing to consider that the agency had found a presumption of credibility to be rebutted. And similarly here. I'm most definitely considering it. So you want me to apply the reasonably discernible test? Yes, Your Honor, which the Supreme Court has instructed courts to apply in Minkdy. And that is a traditional administrative law principle that the court emphasized in Minkdy. And that also applies to the agency's consideration of the petitioner's claims about withholding removal and for cap protection. It's readily discernible that the agency considered the petitioner to be otherwise credible. The agency did not issue a mixed credibility finding, which was the circumstance in Wamboura, where this court could not tell what determination had been made. And notably, while this court has questioned whether there was a threshold determination sufficient with Wamboura in this case, the government would submit that Wamboura does not require the agency to enchant any magic words or follow any particular formula in signaling that it has considered or deemed a petitioner to be otherwise credible. And again, requiring such an incantation of magic words would be inconsistent with Minkdy, which specifically said that the agency need not follow a particular formula or mechanically enchant words to signal that it has made a determination. And in Wamboura, this court simply said there needed to be a determination, not that there needed to be any specific facts on the record. Here, reading the decisions, it's readily discernible that the agency considered the petitioner otherwise credible and then required him to corroborate the specific facts of his claim, as is explicitly provided for in the statute, which says that where an immigration judge requires corroboration, that evidence must be provided unless the non-citizen does not have it and it is not reasonably available. And as it pertains to the petitioner's medical records, he fails at the first part because he testified he did have the medical records. Accordingly, the immigration judge reasonably and counsel for the Department of Homeland Security asked him why weren't they provided? And he said that his mother might have sent them. It was his burden to provide that evidence to support his claim without advance notice from the agency, as this court stated in Wamboura in deferring to the board in matter of LAC. Can I ask you a question about the medical records? So your position is the IJ found his testimony credible. So he's crediting the testimony that he was detained for three days and beaten because he was attending these church services. So then the IJ says, but you don't have the records on the nature of his injuries. Why is the nature of his injuries relevant at that point? It relates to whether the harm that he suffered rose to the level of persecution. That's if he's beaten and detained for three days because he's attending Christian church services. I mean, we've said you don't need injuries severe enough even to require treatment for it to constitute persecution. And if it comes in combination with being detained for three days, you're saying you would need to know more about just how badly he was beaten to know whether he was persecuted. That is something the agency could reasonably require. And notably, the agency wasn't saying and the government's not saying that you need medical records in every case. It's just that in this case, this is what's a part of his claim. And the corroboration statute allows for the agency to ask a non-citizen, prove that what you say happened, happened to you. And he said he went to a hospital to receive treatment for his injuries. So then he and he also said, yes, I have medical records to prove that. But then he couldn't provide those records. And the statute specifically states that where the immigration judge requires corroboration, it must be provided. And this is where I just get this is why I just get it goes back to my very first question. Like I could understand an IJ saying, look, I'm not saying you're not credible, but you haven't met your burden because you would expect there to be medical records in a case like this and you don't have any. But once you've already found, oh, no, you're credible, I believe your testimony, you were beaten, you were detained for three days because of your religion. Like I don't and I know we have cases saying that if you credit the testimony, but you want additional corroboration, they have to go to an element of your claim. And so I'm just I'm stuck on this once, once and this is your position. Once the IJ has said this is credible testimony, I have a concern that the IJ may have been unaware of our case law saying that we don't really it doesn't matter what the nature of your injuries are in a case like this. As to that point, your honor, again, a main guy, the Supreme Court made clear that credibility, persuasiveness and the burden of proof are separate inquiries. And to prevail, a petitioner must satisfy all three. So even if a petitioner credibly testifies and is persuasive, he can still fail to satisfy his burden of proof. And that's what happened here. The petitioner did not satisfy his burden of proof by providing corroborating evidence, which the statute explicitly says an immigration judge can require. And in this case, there is no argument that it wasn't available. The petitioner said, yes, I have these records. He just didn't provide them or provide any persuasive explanation for not sending them. There was one other thing that the IJ mentioned by way of corroboration that I just couldn't kind of figure out intuitively. Why does it matter whether the police who came back to their house, the parents' house to look for Mr. Chen, why does it matter if they had a search warrant? Why was that important to the IJ? I'm guessing there's something going on here that I just don't understand. Why does the search warrant matter? I'm not sure, Your Honor. The immigration judge didn't further elaborate on that aspect, but I think the immigration judge was just pointing out that the statement doesn't have very many details. It could have been the immigration judge may have been concerned or wanting to know if this search was a legal or an illegal search, but he doesn't specifically state. But he does point out numerous other details that the letter from the petitioner's mother does not contain. I just wish there had been more explanation because that also made me concerned that maybe the IJ thought that, well, if they have a search warrant, this is a legitimate operation. Whereas the country reports would sort of indicate to the contrary that there's a lot of stuff in China being done kind of under color of law that is nevertheless persecution. I understand what you're saying about how much we should require of the IJs, but there were just a couple of things in this opinion that made me really wish we had more explanation for why the IJ thought these particular things, the nature of the injuries, whether there was a search warrant, what import the IJ was attaching to this absence of corroborating evidence. Well, and the immigration judge, that's simply one example among many. And again, the immigration judge is issuing an oral decision from the bench, so of course, can't be expected to be as necessarily precise or detailed as a panel who has the chance to sit down and go through multiple drafts. But the immigration judge also pointed out how many times the letter doesn't state how many times the petitioner was asked to report to the authorities when they came to the house, how many times they came. Part of the petitioner's claim is that the authorities have never stopped looking for him, and in fact, that's how he tries to explain his delay in filing his asylum application. But he didn't corroborate that information from anyone, much less the letter from his mother. So the agency permissibly looked at not only the absence of evidence that he testified was actually available, but then the evidence that he chose to submit, which his own attorney acknowledged before the immigration judge, was less detailed than what he would have ideally liked. In addition to the petitioner's point that the agency ignored that he was beaten multiple times, the petitioner's attorney before the immigration judge conceded and stated that he was only beaten one time. But all of that is beside the point because the lack of corroboration is a sufficient and independent ground for denying a petitioner's claims for the holding of removal and cap protection. So the agency did not need to and was not required to reach the questions of whether this harm rose to the level of persecution and whether he had demonstrated a clear probability or more likely than not that he would be persecuted or tortured. Because the statute specifically provides that it is a petitioner's burden, an applicant's burden, to carry the burden of proof and to do so and to provide corroborating evidence where it should be provided. And that's what the agency found here and that's what's provided for and allowed for by the statute. As to the petitioner's arguments that the agency ignored all of the country conditions evidence, this court has explained in the CAT context that simply because there is a pattern of human rights abuses in a country does not demonstrate that any particular individual will be subjected to torture. And that was a key element of his CAT claim, of any CAT claim, is an applicant has to prove an individualized risk of torture. And so without having adequately proved what he feared or what he said happened to him in China, the basis for his claim, he did not have a basis for his claim. And then the country conditions evidence alone did not, was not legally relevant to proving that he specifically would be subjected to persecution or torture. He says, Mr. Kaye, he says it's not legally relevant. But then his evidence is that he, to particularize, he suffered, you know, he endured this persecution because of his religious practice and faith and incarceration. He was beaten. And wouldn't the country report looking at that and considering that corroborate that or support that? You said it doesn't prove it. But that adds to the fact that not only has he individually suffered this, this is a countrywide problem. You seem to be very dismissive of even that evidence, if it was there. No, Your Honors. Go ahead. I don't understand that. Yes, the government is not being dismissive of the evidence, but simply in accordance with this court's decision in Dajua v. Holder, which was an adverse credibility case where the court was looking at to whether the independent evidence, which included membership records in a political party and country conditions, stated that absent the petitioner's non-credible testimony, all that the independent evidence showed was that that petitioner was a member of an opposition party and that members of that party had suffered persecution in their home country. But that is not this case. You admitted that there's no credibility, adverse credibility finding here. So that case is in opposite to this consideration, isn't it? No, Your Honor. It's highly analogous in that the credibility. That case said if you're otherwise incredible, you can't bootstrap it by having a countrywide report to do so. But that's not this case. In this case, is there any finding that he was incredible? No, Your Honor. But at the Supreme Court. Go ahead. Oh, I'm sorry. I was just going to emphasize that the Supreme Court explicitly stated that credibility, persuasiveness and the burden of proof are separate inquiries, but they are related. And when a non-existent, an applicant fails to carry their burden of proving that what they said happened to them happened, it places it in a somewhat analogous situation to an adverse credibility determination. It's just different ways of reaching the same point that the agency cannot. No, no, no. It almost sounds like the game we play with kids. Here I went till you lose. I mean, because he's saying that, well, you need to show this. But if you show it through country, well, that doesn't require and persuasion is different. You found him credible. The question is, Judge Hask asked you about the significance of having the evidence or the hospital report as to the beating. Well, they could have beaten him with a rubber hose, for example, and left no, no, no horn flesh or any kind of bone broken. What difference does that make if you found him credible that he was detained for three days and beaten? And that beating, maybe he was, let's say he was slapped for three days. And all it was is there was the just the brief, as we call it, flush, but the brief contusion of the slap. And he went away, but he was slapped for three days. What difference does it make in terms of if you found that to be credible that you have the medical report? That's what I can't understand. If it's you find it, I see if you don't believe it, that's something different. But if you find it credible that that happened, what difference does that make? Because those were the specific facts of his specific claim of what he said happened. So the agency reasonably and permissively required him to prove that what he said happened actually happened. And in matter of LAC, the board itself pointed to medical records as types of evidence, which the agency reasonably expects to be provided where they are reasonably available. And that's so it's not that medical evidence can never be necessary or important. It's just that the petitioner put forward the claim that he went to a hospital to receive treatment for his injuries. And the agency asked or the immigration judge and government counsel asked, do you have records to prove that? And he said yes, but did not provide them. And the statute specifically provides that where corroborating evidence should be required, it must be required. And the petitioner did not provide that evidence and the evidence that he did choose to submit lacked detail and did not sufficiently corroborate his claim. And that fell well within the agency's discretion to determine. And the record does not compel the contrary conclusion that the court has. Just going back to the torture point in the case you were citing us to. I mean, I do hear what you're saying about this. I'm really struggling with this one. The court, neither the IJ nor the BIA says what you said. They don't say, oh, yeah, we've looked at these country reports. This happens all the time. But that is not enough for an individual to prove his case. They just don't mention the country reports. It never shows up anywhere that what petitioner is describing. And what he alleges to be very worried about, should he be returned to China, in fact, happens. This is a problem. And I just I do take your point that that is not enough to make an individualized showing. But I am concerned I have actually not seen a case like this where you don't at least get the sentence saying, yes, yes, I've looked at your country reports. But it doesn't show that you personally are going to be tortured. What do I do with that? There's just no reference at all. I would point the court to the second page of the immigration judge's decision, which is page 40 of the record where the immigration judge said that he had considered the testimony of the respondent there, the applicant, the proper testimony of his roommate and the exhibits. So it doesn't reference the country evidence by name. But also, I would point the court to the court's decision in Noh, Alaska, Figueroa versus Garland, where this court addressed a situation where the petitioner had claimed that the agency didn't address evidence that he said or, excuse me, she said corroborated her claim that she had been threatened by a specific family in her home country. And this court said, yes, the agency never addressed those specifically in its opinions, but that did not matter because that evidence did not corroborate the specific facts of the petitioner's specific claim. Therefore, it wasn't legally relevant and any error was not did not warrant reversal. But the country reports here are so relevant because they do provide some corroboration for the account given by the petitioner. But they also, you know, the IJ does say, I would have expected to see your co-church members to have submitted affidavits in a case like this. And they're not here. That's a problem for you. And the country reports 100 percent explain that. The IJ was actually I think an argument can be made based on the country reports that the IJ was wrong as like to to. But you would need some explanation for why in light of those reports, the IJ would have expected a lot of people to come forward and say, yes, I, too, am Christian and a member of this home church. And so I do feel like the country reports in this case are relevant. As an initial matter, I would respectfully disagree with the reading of the immigration judge's decision. The immigration judge did point out that, yes, he sort of expected or would think that the church members or pastor would provide evidence, which, again, is a comment during an oral decision. That's all we have. It's not like there's a written decision to follow. We have to go off the oral decision. Correct, Your Honor. And then in the next sentence, in the next sentences, the immigration judge points to, thus the petitioner failed to provide corroborating evidence where corroborating evidence could have been provided, such as any medical attention he received and then about the mother's letter. And then the actual agency decision before review or this court on review is that of the board. The board issues the final agency order, and that is the only decision subject to this court's review. And the board did not adopt or rely on that absence. The board, in fact, stated that the immigration judge wasn't requiring additional corroborating evidence, but simply noting the lack of the deficiency in the evidence that was presented. Right. Including failure to provide corroborating evidence concerning his arrest, detention or activities as a Christian in China, which I mean, I. So. OK, so maybe less relevant to the BIA's decision than to the IJ's decision. Correct, Your Honor. And in closing, I would just, again, emphasize that the Supreme Court in Ming Dang has said that even a decision of less than ideal clarity must be upheld if the path of the agency's reasoning is reasonably discernible. And it is from these decisions and the decisions are consistent with the explicit text of the statute, which provides that the agency can require corroboration and where it's expected it must be provided. If the court has no further questions, we would respectfully request the petition for review be dismissed in part and denied in part. Thank you. Thank you. Thank you, Your Honor. My colleague has said in argument and also in the brief that the lack of corroboration is sufficient and is a sufficient and independent reason to deny a claim for asylum, withholding of removal and protection under the Convention Against Torture. And respectfully, I disagree with that. I think that the government is saying that corroboration is an independent element. Corroboration must be tied. The requirement for corroboration must be tied to an element of the case that the applicant must prove. And here for withholding of removal, the element is past persecution or a likelihood of future persecution because of a protected ground. There's no dispute that it's religion by the government or by a non-state actor that the government is unable or unwilling to control. There's no dispute here that it's the government. The burden of proof is for the applicant to prove that he's suffered past persecution or has a likelihood of future persecution. There's not an independent corroboration element to proving withholding of removal or Convention Against Torture protection. And the corroboration statute says in determining whether the applicant has met their burden of proof, the immigration judge shall weigh the credible testimony along with other evidence of record. And then it gets into the corroboration statement where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony. Such evidence must be provided unless the applicant demonstrates the applicant does not have the evidence and cannot reasonably obtain the evidence. Shall weigh the credible testimony along with other evidence of record. That is where the immigration judge and the BIA erred here. Chen provided credible testimony that establishes that he suffered past persecution and the BIA and the IJ ignored many aspects of that testimony. With regard to the Convention Against Torture, there are two legal errors, not just that the IJ did not consider country conditions evidence, but also the IJ only looked at evidence regarding past treatment of Mr. Chen. The regulations require the immigration judge to consider all evidence relevant to the possibility of future torture. And one of that, one of those items of evidence is country conditions evidence. And this court has held that the failure to consider country conditions evidence alone in a CAT claim is a reversible error. With regard to the case in Alaska, I think it's important to point out that Ms. Nolasco did not actually have actual knowledge of her persecutors' words or intent. And that's one reason why corroborating, that's the main reason why corroborating evidence was so necessary in her case and why this court found in an unpublished decision that the IJ did not err in finding that she did not adequately corroborate her case. And here, Chen personally experienced everything that he testified to, except for when the police came to look for him after he left China. Thank you for your time, your honors. Thank you, counsel. Thank you both. I appreciate your arguments. I wish you well and stay safe. I'll ask the clerk to adjourn the court for today. Tomorrow morning, I suppose. The honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Pamela A. Harris, A. Marvin Quattlebaum Jr.